## No. 9507.

### ISAAC LEVY VS. NEW ORLEANS WATERWORKS COMPANY.

The act of incorporation of the New Orleans Waterworks Company forbids it to charge more for water than was paid to the city at the date of its incorporation on March 31, 1877, and the charge made by the city at that time was fifteen cents for a thousand gallons to large consumers.

An owner of a rice-mill in New Orleans is entitled to the use of water conveyed through the pipes and conduits of the Waterworks Company on paying in advance for his supply at that rate.

| | |
|---|---|
| 38 | 25 |
| 107 | 20 |
| 107 | 32 |
| 107 | 33 |
| 107 | 34 |
| 107 | 35 |
| 107 | 36 |
| 107 | 37 |
| 107 | 38 |
| 107 | 39 |
| 107 | 40 |

A PPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

Jonas & Nixon for Plaintiff and Appellee.

J. R. Beckwith for Defendant and Appelant:

I.

A writ of injunction cannot be lawfully resorted to to compel specific performance where it appears that the alleged contract which it is sought to enforce is not completed or certain in all of its parts, nor where the plaintiff has not carried out as far as possible his part of the alleged contract. High on Injunctions, par. 708, and cases there cited.

II.

The fact that a remedy of law exists for the violation of alleged contract or right is always a sufficient objection to the interference by injunction. High on Injunction, par. 695, et seq.; Morris vs. Society, etc.; 1 Halst, Ch., 203; Greggerson vs. Insley, 4 Blatch, 503; Canton vs. R. R. Co., 21 Md. 383; Collins vs. Plumb, 16 Ves., 454.

III.

Where a plaintiff seeks to enforce what he believes a right secured to him by law, and re- sorts to injunction, the pleadings must show that not only is his supposed right clear and palpable, but that he has tendered full compliance with all conditions imposed on him. Posey vs. Wright, 31, p. 387; 11 Wall. 108; 15 Wall. 547; 72 U. S. 575; 113 U. S, 516.

IV,

A writ of injunction cannot be used to take property out of the possession of another, nor to compel any person to sell his property to another without his consent, or without any agreement as to price. Murdock's case, 2 Bland 461; Bosley vs. Susquehanna, 3 Bland 63; Farmers vs. Reno, 53.Penn, 224; Washington vs. Green, 1 Md, Ch., 97; Blackmore vs. Glunmorganshire, 1 Myl. V. K., 154.

V.

The plaintiff in this case is not entitled to any relief or injunction until he in due form ten- ders the defendant the amount he admits due, or pays the same into court, where the defendant, if he so elects, may take the same without being compelled to resort to a lawsuit to fix the amount or recover the money.

VI.

Under the pleadings in the record and the proofs, the plaintiff has shown no cause of action or right to recover.

---

The opinion of the Court was delivered by

MANNING, J. The plaintiff is a rice-miller in New Orleans, the mo- tive power of his machinery being steam, and he obtains his supply of water from the defendant. He alleges that the defendant by the terms of its charter is compelled to furnish him with water needful for his mill at rates not greater than those charged by and paid to the City of New Orleans on March 31, 1877, but that the company demands from him four hundred dollars a year for his water-supply, a sum greatly in excess of the rates it is permitted to charge, and threatened to cut off that supply entirely unless he complied with its demand. An injunc- tion was prayed and issued forbidding the execution of this threat and certain proceedings under it have heretofore been before us. State ex rel Waterworks Co. v. Levy, 36 Ann. 942.

The defendant, after an exception of no cause of action which was overruled, answered averring that the sum demanded was just and reasonable and the true amount due. There was judgment for the plaintiff decreeing that he had a right to use the water from the pipes and conduits of the defendant at the rate of fifteen cents for one thou- sand gallons, and that this amounts at present to two hundred dollars a year which he must pay in advance, and reserving the right of the

company to recover more if hereafter the supply shall be increased and reserving Levy's right to pay less if the supply shall be decreased, always preserving the rate fixed by the judgment.

The defendant's charter was given it by the legislature of 1877, Acts Ex. Sess. p. 51, and its 15th sect. provides that the Waterworks Company shall have the right to fix the rates of charge for water provided that the net profits of the company shall not exceed ten per cent. per annum, and whenever they do exceed that rate the City Council shall have the right to require a reduction to that rate, and provided further that the charges shall not exceed those then paid to the city. The date of the act is March 31, 1877.

Obviously it was only necessary to ascertain what was the rate paid to the city at that date in order to ascertain the maximum rate that the defendant could charge.

There is a mass of testimony on that point. Prior to and at the date of that Act this mill paid $150 a year for water, and immediately thereafter when the defendant took charge of the waterworks, $175 was demanded and paid, and this sum continued to be paid yearly until the demand was increased to $400 when it was resisted by this suit. It is not claimed, nor is it the fact, that any change had been made in the mill either in machinery or time or manner of running that would increase the consumption of water. It does not appear that these rates of annual charges were the result of any accurate or approximate computation of the quantity of water consumed, but the fact that the city was content with $150 a year as long as she held the waterworks, and that the defendant was content with $175 a year thereafter from 1877 to 1883, creates a strong presumption that these sums were not far wrong or inadequate.

Nor is there any support by the record of the suggestion, made by the defendant in oral argument and in brief, that these rates were affected by the abnormal condition of the City government and of public affairs at that time. If it had appeared that the fixing of these rates had been the result of corruption, official venality, or other like cause, we should not think the defendant bound for all time by rates fixed under exceptional circumstances.

The testimony was addressed to the ascertainment with accuracy of the actual quantity of water consumed, and the price paid to the city by consumers in March 1877. This last is found to be fifteen cents for a thousand gallons to large consumers. The defendant's engineer says a fair way of estimating the quantity is to allow a gallon of water

to each pound of coal, but that this will vary with different kinds of coal, and that experiments recently made by him at the Company's works shewed that even one and one-fifth gallons of water may be evaporated with a pound of coal but that it is unusual and not under ordinary conditions.

He appears to have made examinations and computations specially with reference to the issue involved in this case and with the view of informing himself of the details in order that he might testify on this subject intelligently. He says he knows the size of the plaintiff's boilers and is able to form a correct estimate of the quantity of coal consumed in them in twenty-four hours, and having ascertained the quantity of coal, fixes 7000 or 7500 gallons as the quantity of water consumed in the same time.

It appears that during the year in question the mill ran about eight months. It began about the middle of August and continued until the following May, but from this time is to be deducted alternate Sundays during the time the mill is running day and night, which is two and a half or three months in the first part of the milling season, and still more is to be deducted for the remaining five months of that season when the mill is run only twelve hours or during the day only during which time there are also intervals of two weeks' rest. The lower judge computed the water consumed for three months or ninety days at 7500 gallons a day and for five months or one hundred and fifty days at half that quantity a day, and thus gives a sum total of 1,237,500 gallons for the season, the cost of which at fifteen cents a thousand gallons is a fraction over $185. The plaintiff offered to pay $200, and the judgment fixes that as the sum to be paid by him for that year, providing at the same time for its increase or decrease as the consumption of a greater or less quantity of water shall warrant.

The judgment is based on as reliable data as can be obtained. It is more favourable to the company than the computation warrants but the plaintiff does not complain.

The defendant foresees ruin if it is compelled to abide by a rule that inexorably requires it to furnish water at the various rate prescribed in the judgment, but in truth the rate was fixed and prescribed in its own act of incorporation. The cardinal requirement is that it shall not charge more than was paid to the city at the time when it accepted the franchise, and the estimates of its own engineer indubitably fix the sum due from the plaintiff as not exceeding that for which judgment was awarded.

Judgment affirmed.